Good morning. May it please the court, Joseph Klapitz for the Appellant Morning Star. I'm joined here today by my client's trial counsel. I will try to reserve five minutes for rebuttal. The district court got this case right before it got it wrong. It initially granted a preliminary injunction that prohibited the appellees from constructing a two-story residence in violation of a restrictive covenant. The appellees removed a window from that two-story residence and the district court flip-flopped and it dissolved the preliminary injunction on that basis. So counsel, I have just a preliminary question. What is the status of the construction? As the current status of the construction, as far as we are aware, is it's not completed. There's been no issuance of a certificate of occupancy, and so it's ongoing. And there's nothing, certainly in the record, that suggests... I understand that there's nothing in the record, but the district court did vacate the injunction, and so presumably things have been happening since the injunction was vacated. And it's a little bit, it's hard to read between the lines and what has been submitted by the parties since that point in terms of where are we. Is there anything left to which is ongoing, as we understand it. But her question is, what does that mean? Is it 90% complete? Is all you need, the certificate of completion? Well, the certificate of occupancy says that you can come in and live there. And the current status is unclear to my client, but there's certainly nothing in the record before this court that confirms the construction is completed. And Do this on the back end. I mean, if your answer is you don't know, then that's fine. But I don't think relying on the record is sufficient, because we could just on the back end say, file supplemental briefs. We're not convinced that this case isn't moot. Our understanding is that the construction is not completed, that there's still work going on, that they don't have, for example, water yet into the property, and that no certificate of occupancy has been issued from checking the website. So that's the current status, as we understand it. The sole issue, I think, before this court is whether removing this window from the illegal two-story construction is a significant change in the facts that eliminates the irreparable harm to my client. And I'd like to focus on two key errors of law this morning that I think require reversal. The first is that the district court erred in concluding that removing the window was a significant change in the facts. The 1994 restrictive covenant unambiguously prohibits any improvements on lot 16 that are greater than one story. And both the original two-story residence and the modified two-story residence without the window violate that covenant. Didn't he also indicate that there was no specificity about height in that two-story analysis? Wasn't the judge concerned about what height meant in that two-story analysis? The judge did seem to think that there was... This is the clearest way maybe to explain the judge's error. The district judge in this case repeated the same error that the Court of Appeal made in the Narstad decision. In Narstad, there was a restrictive covenant that said, you can't have any pets. And the Court of Appeal looked at it and said, well, gee, it says you can't have any pets, you know, but the plaintiff in that case has some cats and she keeps them indoors and they don't bother anybody. Right? So the Court of Appeal in Narstad said, it's kind of no harm, no foul, right? Nobody is really harmed by this. Narstad, the California Supreme Court, which is, you know, binding on this issue, looked at that and said, that's completely the wrong analysis. When we're looking at restrictive covenants, we have to enforce them according to their terms. So they could have a one-story building that's 50 feet tall? No, no. That's not true. What the district court said in the preliminary injunction was that there were two separate and independent restrictions. One was a height restriction of 18 feet. The other, and they were separated by the disjunctive or, which means that there were two separate and independent restrictions, or they could have one story, right? So the issue here is they clearly have violated that story restriction, right? They have a two-story property. It's not subject to any dispute. And in fact, the California Supreme Court in the, I'm sorry, the California Court of Appeal in the King decision addressed exactly the same situation, squarely on point. It was a nearly identical garage with a room overhead and that violated a nearly identical story restriction, right? Now I'm distinguishing that between a height restriction, a story restriction, and the court entered an injunction to stop that, stop that construction. So we have a situation where the courts have looked at this and said, we're going to apply the plain language here. And the district court here said, well, he took out a window, and so, therefore, it, you know, I'm not going to apply the plain language. And that's completely contrary to California law. The planned residence is greater than one story, with or without the window. It continues to violate the restrictive covenant. And removing the window wasn't a significant change. Now, the other error that I want to highlight is the district court applied the wrong legal standards when it analyzed Morningstar's irreparable harm and overvalued Appellee's purported hardship. The district court undervalued Morningstar's irreparable harm by examining the purposes behind the restrictive covenant instead of enforcing it according to its plain terms. It's the same error as the Court of Appeal in Narsetad, right? No harm, no foul, right? The cats aren't bothering anyone. And the California Supreme Court in Narsetad said that's not okay. And it cited with approval the Walker decision, which also squarely addresses this issue. Walker says, when an owner sells a land to another, he has the right to define the injury for himself. And the purchaser has to abide by that definition of what was the balance of the land. So the owner can enforce the covenant when it's broken, and the breaking of the covenant can't be defended on the ground that other people might think that there's not really any harm there, right? So Walker and Narsetad both specifically address the situation that occurred here, and specifically highlight how the district court's analysis and application of the irreparable harm factor was flawed. Now, in addition, the district court also interpreted the interests protected by the 1994 restrictive covenant much too narrowly. It focused exclusively on Morningstar's right to privacy, but only one aspect of it, which was the right not to be observed through a second story window. In doing so, it failed to acknowledge that this restrictive covenant protects a whole panoply of other rights. For example, it protects Morningstar's right not to be disturbed, right? If you know the layout of these properties are, my client's home is located downhill. So you have basically a two-story building that's towering over my client's property. There's a little bit of a logical break here for me. If you're right that California basically has strict liability, like must follow restrictive covenants period, doesn't matter whether somebody's somebody wrote those, they were recorded on the property, they apply on their flat terms. If that's true, and I think you've got some cases that suggest that that might be true, then why would we weigh any of the competing interests and sort of balance of the hardships? Because isn't California telling us it doesn't really matter? What the way the analysis would work in this context is we would look at the restrictive covenant. We would see is it a valid and enforceable restrictive covenant and is it being violated? If it's being violated, then the court should look at that and say, well, that is irreparable harm because a property interest is being lost, right? Here, the property interest that's being lost is my client is being disturbed by a two-story building uphill, located uphill. I get that, and I think your argument has to be that California law defines harm, and California, the way it views restrictive covenants, has decided that this is a significant irreparable harm. I get that. So now we're on to the next one, the balancing of hardships, and you are making an argument about sort of the purposes that might lie behind this story restriction, and my question is, if it's really strict liability, what does it matter what the purposes are? It's just written, and that's what it is, and you enforce it as written. Well, I think that's the correct analysis, and in fact, I would note that's exactly the analysis that's performed by the four Supreme Court decisions that we cited from the other states. The Sandstrom case in Hawaii, the Gladstone case in Nevada, which I would note involved a preliminary injunction. It was both a preliminary and a permanent injunction. The Hindson case in North Dakota and the McDonough case in Vermont. All four of those courts looked at this situation and said, when you're talking about granting injunctive relief to enforce a restrictive covenant, we don't really weigh the balance of the hardships. The only thing that really matters is there being a violation of that covenant, and what I would note is here, and I think it's especially critical here, appellants had actual and constructive notice of this restrictive covenant. In June 2020, the city of Malibu writes them and says, are you in compliance with the restrictive covenants on this property? And they said, oh, well, we're aware of them, but we just don't think that they apply. So they have actual and constructive notice, and what the courts have said looking at that is, when a party has noticed a restrictive covenant and it violates it, we don't weigh the relative hardships. And this is perhaps a way to explain the legal analysis in a way that makes sense. Appellees have not suffered any legally cognizable hardship in being told to stop building an illegal two-story residence that they never had the right to start building in the first place. And I think that's the analysis that the courts have done when they've looked at this situation. And in fact, until now, no court at all has ever held that a defendant's interest in continuing illegal construction in violation of a restrictive covenant outweighs a plaintiff's interest in enforcing that covenant. And no court has ever applied this relative hardship doctrine to relieve a defendant from the consequences of violating a restrictive covenant. In fact, we cited to you the Woodridge-Escondido case, which the court looked at it and said, wait, you're citing the relative hardship doctrine. That doctrine applies only under California law to encroachments. It doesn't apply when we're talking about knowing violations of restrictive covenants. And so it expressly distinguished those encroachment decisions. And the only case in the district court's recent summary judgment order, it talked about the that addresses a situation involving restrictive covenants. And it's readily distinguishable because it's an encroachment case. It's a case where there was truly an innocent party where there was a surveying error for the property line. And it was a case where variances had been repeatedly granted. And so the court said, we're not going to enforce this according to its strict terms because variances to the restrictive covenant have been repeatedly felt. So there's really no to support what this district court did in this case. If I could just very briefly and then reserve the remainder of my time for rebuttal, I would beg this court to act as quickly as possible here. The district court took a wrong turn on the law. And that wrong turn has taken it down into a wrong direction. And I know that the summary judgment ruling isn't before this court, but you can see that where the other side is trying to gear this case up to is to be able to say, oh, look, it's moot, and let's start all from scratch with a new appeal. This case is not moot. There's not even a final summary judgment ruling. This court should issue a ruling quickly. It should even consider issuing a disposition with a decision to follow so that the court can know, the lower court can know and get back in the right direction. So I'll reserve my remaining time. Thank you, Your Honor. Good morning, Judge Kishima, Judge Forrest, Judge Cardone, and colleagues of the court. My name is Michael Friedman, and I am representing the defendants, counterclaimants, and appellees Keith Cantor and Karen Schoen. I'm accompanied today by my co-counsel, lead counsel in the case, Alan Robert Block. I'm going to start with the first question I asked the other side. What is left to be done on this building? Building or second floor? Second floor is done. Fair enough. Second floor is done. Rooftop deck, done. Do we need to put in a driveway still? Yeah. Is there a certificate of occupancy for the entire house? No. But the injunction only goes to the second floor. Second floor is done. We made a motion for request for judicial notice on the basis of the summary judgment that was made by the defendants in the district court. It was granted in part, denied in part, and the court requested additional briefing on an issue which was raised in this appeal, but not addressed by Mr. Klafitz just now, which is whether or not the rooftop deck also constitutes some sort of violation of this that the trial court needs to take into account. Right now, we're working on a very incomplete record in front of this court. There's a lot more facts that have come up. There's a lot more involved. This is a case in equity. This is our only case on the calendar today where we're sitting in equity discussing what is the role of the court in deciding what is fair, what is appropriate, where there is competing interests between rights on both sides. But the underlying question to that is, in the case of this type of restrictive covenants on real property, is the court correct in weighing the hardships, weighing the burden? Your Honor, in other words, I think your point is, depending on cases that say, well, whether it's a restrictive covenant, we don't go into those factors. Yeah, I understand that. As Judge Horace referred to it as strict liability. And I understand that position. It's wrong. Of course, the winter factors always apply when a federal court evaluates whether to issue a preliminary injunction and whether to dissolve it. True. But state law, when we're sitting in diversity, informs what harm is, what legally cognizable harm is. And here, California seems to be saying that any violation of a covenant as written is harm. Your Honor, my opponent unfortunately misstated the holding of NARSTAT, both in the briefs and this morning. NARSTAT is based, first of all, involves common interest developments. Fortunately, this case involves a common interest development so that NARSTAT does apply. NARSTAT doesn't create new law. It's based on California Civil Code 1534. 1534 says that restrictions in the form of CC&Rs on common interest developments must be enforced unless unreasonable. They have always left out the unless unreasonable part. And so the question is, is what is the standard for reasonableness? The standard isn't for the person in NARSTAT, the poor lady who had the three cats that was being fined for it and had to get rid of her cats. It's not whether it's fair to her or reasonable to her. It's whether it's reasonable for the entire common interest development, the entire subdivision to have a pet. Here, the question is whether or not there should be some sort of uniform rule with respect to the height and development of property. The only thing that's... I guess I don't understand this case as an attack on the restrictive covenant itself as being somehow invalid for any reason. It's just whether it ought to be enforced. I think you do make and that are different than the other side. But I didn't understand that you were saying that the restrictive covenant is just invalid. Not invalid, but unreasonable. Shouldn't be enforced. And the reason that it's unreasonable is that it contains two different restrictions. One is the 18-foot height limit, which is fine. Every other one-story unit in the entire subdivision is limited to 18 feet. But this property, unlike the others, has an additional requirement that it be only one level. Is this really... I mean, I guess this is not my area of expertise, but is this really the forum to make that sort of general challenge to the restrictive covenant as opposed to challenging its application to these particular facts? Because the argument you just articulated has nothing to do with these particular facts. It's just you don't like this restriction, and you don't think that it's valid. Well, Your Honor, it's a question of whether or not it is fair and reasonable whether that restriction should be enforced as written. I understand that. So my question is, and maybe you don't know the answer either, but is this really the forum to make that argument? Well, it's the difference between most of the cases at law versus cases in equity. This is a very factual dependent case. One that is particularly suited for the trial court to make determinations as to what are the facts that make it reasonable or unreasonable to impose a building restriction. See, the reason why the removal of the window was so significant is twofold. One, Mr. Nazemi, who is the occupant of the property next door, says he can't even see my client's house from his property. The only way he knew about it was that there were workers standing on the roof, and he could see those workers on the roof of the house. So by removing the window, it removed the so-called vantage point from which you could look down onto the Morningstar property. And essentially from the Morningstar property, it would be the same whether it was one story or two stories, because all you see is an 18-foot high structure with no windows, and you don't know what's inside of it. So all they're doing really is trying to say, it shouldn't be two stories, it should only be one story, but it means nothing to them. There's no particular advantage to be gained by it. It's strictly punitive at that point, because what you do inside your house, how you use the airspace in your house, that's something that we should be able to regulate through a restrictive covenant. And it is within the court's ability to say that that's unreasonable, that what happens inside your house isn't something that should be subject to restriction by a neighbor. Now, the reason that you have two stories is, again, for privacy protection. The district court focused on privacy protection, and when it voiced a concern in its issuance of the preliminary injunction, our clients didn't fight, they didn't come up to the Court of Appeal and say, oh, he's wrong. No, they went to the city and said, let's fix it. And that's all that needed to be done. So what did they do? They took measures, mitigation measures, to provide for the privacy, which was the whole purpose of the restrictive covenant in the first place. And once that window is gone, and you can't tell from the outside whether it's one or two stories. Not the whole purpose of the restriction. It may be a substantial purpose, but not the whole purpose. Well, it seems to be a balance between the privacy rights of the downslope landowner, lot 17, versus the view protection rights of the upslope landowner, which is lot 16. Which is why, in addition to the height restriction on lot 16, there are landscape restrictions on lot 17, limiting the height of landscape, so that the upslope property owner can see over lot 17 to enjoy an ocean view, which is the whole point of these properties in Malibu, is to be able to enjoy the ocean view. So they're saying that they don't want to have a second story. Right now, there's no way for them to even know what's going on inside the house. It's all being done internally. The removal of the window from the side of the property, facing the Morningstar property, makes it so that it's the same as if it's one story or two stories. It's no different. They have argued since that there's a rooftop deck, and that that makes a difference. And that was raised in the brief. Judge Selna, the district court judge, did not consider that because it wasn't raised when they sought their preliminary injunction. And as a result, it did, it was always there. It was always in the plans. It wasn't a changed circumstance that they could raise for the first time on a motion to dissolve the preliminary injunction, either for or against it. Do you have a trial date in this case? Yes, we do. It's in November. I think November 8th. Sometime in November. And we are submitting briefs to the district court on the issue of this rooftop deck, which is due on July 28th. This case is moving ahead very rapidly because Judge Selna understands that with a preliminary injunction, there's no time to be sitting around, you know, wasting time when you're trying to talk about possibly stopping construction. Because construction delays are enormously expensive. And quite frankly, it creates a real hardship for my clients who basically have no place, they're renting a house waiting for this house to be finished. And it's putting quite a cloud over them. But fortunately, we were able to do as much with the construction as possible. And they're moving forward with it as quickly as possible. But what I want to focus on is the idea that this is an illegal residence. Okay, the restrictive covenant isn't a law. It's a contract. In fact, it's really just a restriction that was imposed by the developer because there aren't two parties to this restrictive covenant. It was simply the developer who imposed this restriction as a CCNR against the subdivision, but that only affects these two properties. So this can't really even be viewed as an agreement between two property owners that need to be preserved. This was a restriction that was imposed by the developer. And just like all CCNRs, it's subject to Civil Code Section 1534 and to the ruling in NARSTAT. And specifically, NARSTAT said that there are three exceptions to the rule that you have to strictly enforce a restrictive covenant. Those three restrictions are it has to be enforced unless it violates public policy. It bears no rational relationship to the protection, preservation, operation, or purpose of the affected land, which is why, Judge Forrest, we go into the issue about why we're talking about all these specific facts about whether or not it involves privacy and whether this is something that the court should be looking at. That's one of the exceptions that NARSTAT created. But the third is that the burdens on the affected land are so disproportionate to the restriction's beneficial effects. So that you actually do a weighing, even though NARSTAT says, or other cases have held, you don't do a balancing of hardships, you do balance the restriction's harms to its beneficial effects. So as a result, in the order on the summary judgment motion, which, by the way, I did make a motion for request for judicial notice on that. I'm hoping that there'll be some type of ruling with respect to that request. But specifically, the three questions that are pending in the trial court right now as to whether or not summary judgment should be granted are, where are my three questions? Whether or not the rooftop deck constitutes a harm to Morningstar if the restrictive covenant is not strictly enforced? And what is the harm to the Cantor Shone if the restrictive covenant is strictly enforced? We submit that the trial court should be allowed to do its job. This court did not stay the court's order. There was no emergency. The court dissolved the preliminary injunction, but only on condition that actions were taken to preserve the neighbor's privacy. They already received injunctive relief, and that's permanent. The window was removed, the house was reframed in that area. It's a solid wall now, there's no window there. They've already gotten relief. The point is whether they're saying it's not enough. No, we need to also stop them from having the interior of their house include a bit on that. All right, I'm going to launch in here again. If he's right, if he's correct that the second story is done, why isn't this case moved? It is not done. So that is hotly disputed. That's the first point I'm going to make. It's hotly disputed whether the construction is completed. They are still including especially the second story patio, which can only be accessed through the second story bedroom. So this construction is ongoing. There's nothing in the record suggesting it's completed. Again, it's sharply disputed that it is not completed, that the construction is ongoing. And I would note as well that this is a core issue. It's not going to go away in this case. Whether we are entitled to strict enforcement of the restrictive covenant is the legal issue in case. This case is only going to come back to this court after judgment if it doesn't rule on this now. And it would be a terrible waste of judicial resources. The district court needs guidance now. This court has the ability to give that guidance and there's no evidence at all before this court. And we sharply dispute that this case has become moved. A lot of his comments were directed towards challenging the validity of the restrictive wade. It was not raised below at all. It was not challenged whether it was invalid or not. And even if it were, there is absolutely no authority in California anywhere that suggests that a story restriction is unreasonable and unenforceable. And in fact, the King case, as I said, specifically involved a story restriction and said that it was enforceable. And so to reach such a conclusion would be a dramatic departure from California law. And if this district court's decision is allowed to stand, no homeowner is going to be able to rely on the language of the restrictive covenants. And the California and the federal courts are going to be flooded with lawsuits filed by wealthy landowners who are trying to buy out the restrictive covenants. And I think just think about a tech titan who's buying a $50 million mansion, you know, constructing a $50 million mansion in Malibu. For him, he's perfectly happy to pay a few million dollars to buy out his neighbor's view. And that's exactly what California law has said you can't do. And so if this court doesn't act soon, the ramifications will be felt up and down California's coast. And with that, I will submit. All right. The matter of Morningstar versus Cantor is submitted, and we are in recess for the session. This court for this session stands adjourned.
judges: TASHIMA, FORREST, Cardone